UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MELANIE DENETTE GRAYBEAL, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | No. 2:18-CV-00143-JRG-CRW |

**MEMORANDUM OPINION**

This matter is before the Court on Petitioner Melanie Denette Graybeal's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1], and the United States' Response in Opposition [Doc. 6]. For the reasons herein, the Court will deny Ms. Graybeal's motion.

I. **BACKGROUND**

In 2017, Ms. Graybeal pleaded guilty to conspiring to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. [Plea Agreement, Doc. 214, at 1, No. 2:17-CR-00012-21-JRG; Minute Entry, Doc. 232, No. 2:17-CR-00012-21-JRG]. In the plea agreement, Ms. Graybeal agreed to a waiver provision, in which she waived her right to collaterally attack her sentence under 28 U.S.C. § 2255 but with the exception that she could pursue claims for prosecutorial misconduct and ineffective assistance of counsel. [Plea Agreement at 9].

Leading up to Ms. Graybeal's sentencing hearing, the United States Probation Office prepared and filed a presentence investigation report, in which the probation officer calculated Ms. Graybeal's criminal history score. The probation officer tallied thirteen countable points for

prior convictions, including two points under USSG § 4A1.1(b) because Ms. Graybeal, in 2013, failed to appear in general sessions court, which resulted in a sentence of eleven months and twenty-nine days but was suspended to a sentence of thirty days and probation. [PSR, Doc. 326, ¶ 36]. Ms. Graybeal's probation, however, was later revoked because she refused a drug screen, and she received a sentence of eleven months and twenty-nine days for violating her probation. [*Id.*].

Under USSG § 4A1.1(d), the probation officer went on to add two more points to Ms. Graybeal's criminal history score because Ms. Graybeal committed her federal offense—i.e., a conspiracy to distribute five grams or more of methamphetamine—while serving a state-court sentence. [*Id.* ¶ 45]. Her total criminal history score was therefore fifteen, which established a criminal history category of VI. [*Id.* ¶ 16; Statement of Reasons, Doc. 400, at 1]. At sentencing, Ms. Graybeal's attorney did not object to the probation officer's calculation of Ms. Graybeal's criminal history or to any other portion of the presentence investigation report. [Def.'s Notice of No Objs., Doc. 331].

With a criminal history category of VI and a total offense level of 21, Ms. Graybeal had a guidelines range of 77 to 96 months' imprisonment, [Statement of Reasons at 1], and the Court sentenced her to 77 months, at the bottom of the guidelines range, [J., Doc. 399, at 2]. She did not appeal the Court's sentence but did file a timely motion under 28 U.S.C. § 2255, in which she brings multiple claims, including a claim of ineffective assistance of counsel. The United States opposes her motion. Having carefully considered Ms. Graybeal's claims and the parties' arguments, the Court is now prepared to rule on them.

2

Case 2:18-cv-00143-JRG-CRW   Document 8   Filed 05/21/21   Page 2 of 13   PageID #: 34

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing she is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003)

(quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to doc.no relief," she will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

### III. ANALYSIS

Ms. Graybeal's claims are threefold. First, she argues that the probation officer did not correctly calculate her criminal history points and that her attorney was ineffective for failing to object to the probation officer's incorrect calculation. [Pet'r's Mot. at 4]. Second, she claims that she "should have been charged under a mixture of methamphetamine not actual

4

methamphetamine." [*Id.* at 5]. And third, she contends that the United States violated her rights under the Fourth Amendment of the Constitution because it "used illegally obtained cellular information." [*Id.* at 6]. The Court will now address each of Ms. Graybeal's claims.

### A. Ineffective Assistance of Counsel

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right is the right not merely to representation but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). When a prisoner contests his sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To establish deficient performance, a petitioner must show that his counsel, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. And to establish prejudice, a petitioner must demonstrate that his counsel's deficient performance was so serious that it deprived him of his fundamental right to due process. *Id.*

A court has license to address the two prongs of the bipartite test in any order, and if a petitioner fails to establish either of the prongs of this test, his claim of ineffective assistance of counsel fails. *Id.* at 697. In other words, even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Id.* at 691 (citation omitted). In short, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant

5

must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (citation omitted)).

*Strickland*'s two-pronged test also applies to challenges of guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner can challenge his guilty plea under *Strickland* by demonstrating that he was not competent to plead guilty. *Stewart v. Morgan*, 232 F. App'x 482, 487 (6th Cir. 2007). First, a showing of deficient performance requires "sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency." *United States v. Dubrule*, 822 F.3d 866, 881 (6th Cir. 2016) (quotation omitted). Under the Supreme Court's decision in *Dusky v. United States*, 362 U.S. 402 (1960), a record will lack indicia of incompetency if a defendant had (1) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) "a rational as well as factual understanding of the proceedings against him." *Id.* at 789; *see Godinez v. Moran*, 509 U.S. 389, 398 (1993) ("[W]e reject the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the *Dusky* standard."); *see also Stewart*, 232 F. App'x at 487 (applying *Dusky*'s standard to a plea hearing). Second, a showing of prejudice requires "a reasonable probability that, but for counsel's [failure to request a competency evaluation prior to or during the plea hearing], the result of the proceeding would have been different." *Dubrule*, 822 F.3d at 881.

6

Ms. Graybeal maintains that she should have received only one criminal history point under USSG § 4A1.1, not two, and that her attorney was ineffective for not objecting to the probation officer's tally. [Pet'r's Mot. at 12]. USSG § 4A1.1, in part, states:

> The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
>
>> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

USSG § 4A1.1(a)–(c). According to Ms. Graybeal, "[s]ince [her] charge [in] . . . 2013[] was a failure to appear and only adjudicated to 30 days suspended it can only be pointed 1 criminal history point under 4A1.1." [Pet'r's Mot. at 12]. In response, the United States acknowledges that "[i]t is true that, for partially suspended sentences, 'only the portion that was not suspended' is to be considered," [United States' Resp. at (quoting USSG § 4A1.2(b)(2))], but it argues that Ms. Graybeal overlooks USSG § 4A1.2(k)(1), under which "any term of imprisonment imposed upon the 'revocation of probation' is added to the original term of imprisonment when determining the total length of the sentence," [id. (quoting USSG 4A1.2(k)(1))].

Ms. Graybeal is correct that, for failing to appear in general sessions court in 2013, the sentencing guidelines would have yielded a criminal history point no greater than one because her sentence of eleven months and twenty-nine days was suspended to a term of less than sixty days: thirty days and probation. *See* USSG § 4A1.1(b)–(c), 4A1.2(b)(2). But as the United States points out, Ms. Graybeal's probation was later revoked, and she received a sentence of eleven months and twenty-nine days. [PSR ¶ 36]. Under USSG § 4A1.2(k)(1), the probation officer was required to "add the original term of imprisonment," i.e., thirty days, to Ms. Graybeal's "term of

7

imprisonment imposed upon revocation," i.e., eleven months and twenty-nine days. Those two terms of imprisonment together produce a criminal history score of two under USSG § 4A1.1(b), and Ms. Graybeal's attorney therefore had no legitimate basis to object to the two-point score she rightfully received. *See Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003) ("Counsel is not required by the Constitution to raise frivolous . . . arguments to avoid a charge of ineffective representation." (citation omitted)); *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument[].").

But even if Ms. Graybeal had managed to demonstrate that her counsel's failure to object to her criminal history points constituted deficient performance under the Sixth Amendment, her claim would still falter because she has made no showing of prejudice under *Strickland*'s second prong. Although "attorney errors resulting in increased prison time can constitute prejudice," *Thelen*, 131 F. App'x at 65–66 (citing *Glover v. United States*, 531 U.S. 198, 203–04 (2001))), the United States correctly argues that "a reduction of one criminal history point would not have altered [Ms. Graybeal's] Guidelines range, because she would still have had a criminal history category of VI," [United States Resp. at 3 n.1]. Indeed, Ms. Graybeal's total criminal history score was fifteen, so even if the Court were to accept her argument that she is entitlted to a one-point reduction under USSG 4A1.1, her total criminal history score would have been fourteen, which, under the 2016 Sentencing Guidelines, still yields a criminal history category VI. She therefore endured no prejudice from her attorney's failure to argue for a one-point reduction on her behalf. In sum, Ms. Graybeal does not satisfy her burden of demonstrating that she suffered an error of constitutional magnitude entitling her to the extraordinary remedy of § 2255 relief.

8

### B. Procedural Default

As for Ms. Graybeal's two remaining claims, the United States rightly argues that she has procedurally defaulted on those claims. Under the doctrine of procedural default, a defendant who fails to raise an issue on direct appeal may not raise that issue in a § 2255 petition unless she can establish cause and prejudice to excuse her failure. *Huff v. United States*, 734 F.3d 600, 605–06 (6th Cir. 2013). The "hurdle" that a petitioner must vault to excuse procedural default is "intentionally high . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (citation omitted). The element of cause requires "good cause" for the petitioner's failure to raise her claims on direct appeal, and the element of prejudice requires the petitioner to show that she "would suffer prejudice if unable to proceed" with those claims. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998)).[1]

Ms. Graybeal failed to raise the issues in her two remaining claims on direct appeal—i.e., her assertions that the United States should have charged her with a conspiracy to distribute a mixture of methamphetamine and that the United States violated her Fourth Amendment rights by obtaining and using illegal cellular information. Despite having failed to raise these issues on

---

[1] Rarely, a defendant who fails to establish cause and prejudice can still obtain review of her post-conviction claims if it is necessary to avoid a fundamental miscarriage of justice, as when a defendant is able to show her actual innocence by submitting new evidence to the Court. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *see Bousley*, 523 U.S. at 622–24 (stating that "'actual innocence' means factual innocence, not mere legal insufficiency" (citation omitted)); *see also McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (stating that the actual-innocence exception deals with a "severely confined category [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'" (quotation omitted)); *Jamison v. Collins*, 100 F. Supp. 2d 521, 533 (S.D. Ohio 1998) ("To demonstrate a 'fundamental miscarriage of justice,' a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent." (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986))). Ms. Graybeal, however, does not allege that a review of her claims is necessary to avoid a fundamental miscarriage of justice.

direct appeal, Ms. Graybeal makes no appreciable argument that cause and prejudice now entitle her to raise them in a § 2255 proceeding. Ms. Graybeal has therefore procedurally defaulted on her remaining claims.[2]

But even if Ms. Graybeal did not procedurally default on these claims, they would still fail on the merits. Ms. Graybeal's contention that she "should have been charged under a mixture of methamphetamine not actual methamphetamine" calls into question the government's exercise of prosecutorial discretion, which is ordinarily not subject to judicial review. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) ("In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." (quotation omitted)); *United States v. Bishop*, 306 F. App'x 934, 937 (6th Cir. 2009) ("The caselaw is legend from the Supreme Court and the courts of appeals that the investigatory and prosecutorial function rests exclusively with the Executive." (quoting *United States v. Derrick,* 163 F.3d 799, 824–25 (4th Cir. 1998))); *United States v. Curney*, No. 15-cr-20314, 2017 WL 2198928, at *3 (E.D. Mich. May 19, 2017) ("[The petitioner's] arguments amount to a disagreement with how the prosecutor exercised her prosecutorial discretion. This is insufficient to state a claim for habeas corpus relief under § 2255.").

Besides, as the United States points out, Ms. Graybeal stipulated, under oath, that the factual basis in her plea agreement was true and correct, and in that factual basis, she "agree[d] that she conspired with her co-defendants to distribute methamphetamine (actual) and that she is responsible for the distribution of at least 20 grams but less than 35 grams of methamphetamine

---

[2] The United States also correctly argues that Ms. Graybeal waived her right to pursue her additional claims by agreeing to the waiver provision in her plea agreement. [United States' Resp. at 6]; *see Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (recognizing that "[i]t is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement" if she enters into the waiver provision knowingly and voluntarily (quotation omitted)).

(actual)." [Plea Agreement at 5]. "Solemn declarations in open court carry a strong presumption of verity," and "representations of the defendant . . . at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), *see Marks v. Davis*, 504 F. App'x 383, 386 (6th Cir. 2012) (acknowledging "the plea transcript itself carries great weight" (citing *id.*)). Ms. Graybeal is bound by her statements during the plea colloquy—which she does not contest here on collateral review—and she makes no argument as to why the Court should permit her to disavow those statements. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [during a plea colloquy], 'the defendant is bound by his statements in response to that court's inquiry.'" (quotation omitted)).

Lastly, as to Ms. Graybeal's claim that the United States violated her Fourth Amendment rights by obtaining and using illegal cellular information, this claim, too, lacks merit. To support this claim, Ms. Graybeal relies on *Carpenter v. United States*, 138 S. Ct. 2206 (2018), in which the Supreme Court held that the Fourth Amendment generally requires the government to obtain a search warrant before acquiring an individual's cell-site information location—a cellphone record that "provide[s] a comprehensive chronicle of the user's past movements." *Id.* at 2211, 2216–21. But by Ms. Graybeal's own admission under oath, the United States did not rely on cell-site information; instead, it relied on phone calls and text messages. *See* [Plea Agreement at 3–5]. Even if the United States had obtained her cell-site information, it did not "use[]" it, as she claims, [Pet'r's Mot. at 6], in the manner that it used cell-site information in *Carpenter*, in which the United States presented the defendant's cell-site information to a jury and obtained multiple convictions that led to a sentence of more than a hundred years, *Carpenter*, 138 S. Ct.

11

at 2213. Rather, in Ms. Graybeal's case, she chose to knowingly and voluntarily enter into a plea agreement with the United States based on the evidence that the United States had in hand. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that [may have] occurred prior to the entry of the guilty plea.").

Besides, the Supreme Court decided *Carpenter* on direct review, not on collateral review, and it has given no indication that *Carpenter* applies to § 2255 proceedings. *See Carpenter*, 138 S. Ct. at 2220 ("Our decision today is a narrow one."); *cf. Bullard v. United States*, 937 F.3d 654, 657 (6th Cir. 2019) ("[The defendant] runs into a problem getting to the merits of his argument: he is not on direct review. . . . [The case he relies on] provides no relief on collateral review."); *Walton-Bey v. Skipper*, No. 18-cv-13722, 2020 WL 1274995, at *2 (E.D. Mich. Mar. 17, 2020) ("In *Carpenter*, a direct review case, the Supreme Court did not hold that the rule it announced applied retroactively to cases on collateral review. Nor has any subsequent Supreme Court case so held."); *United States v. Davis*, 1:13-cr-28, 2019 WL 1584634, at *2 (M.D. Pa. Apr. 12, 2019) ("[T]he rule in *Carpenter* is not effective retroactively, and Defendant here cannot rely on it to collaterally challenge his conviction."); *see generally Barber v. Brunsman*, No. 3:08-cv-105, 2008 WL 2791893, at *1 (S.D. Ohio July 16, 2008) ("While the Supreme Court decisions in question are applicable to cases on direct review, they are not applicable to cases pending on collateral review, such as Petitioner's."). Once again, Ms. Graybeal fails to raise any cognizable basis for relief under § 2255.

12

Case 2:18-cv-00143-JRG-CRW   Document 8   Filed 05/21/21   Page 12 of 13   PageID #: 44

### C.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability, which is necessary for Ms. Graybeal to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claims on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having considered the merits of Ms. Graybeal's claims, the Court does not conclude that reasonable jurists would find that its rejection of her claims is debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Ms. Graybeal.

### IV.  CONCLUSION

As the petitioner under § 2255, Ms. Graybeal fails to satisfy her burden of establishing that her conviction and sentence were in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. Her Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1] is therefore **DENIED**, and this case is hereby **DISMISSED with prejudice**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
